2020 BNH 002

---

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re

  Edward Charles Furlong, III,      BK No. 16-11149-BAH

    Debtor


Specialized Loan Servicing, LLC,

    Plaintiff            Adv.  No. 18-1077-BAH

v.

Town of Bartlett,

    Defendant

*John F. Willis, Esq.*
*Fidelity National Law Group*
*Attorney for the Plaintiff*

*Christopher T. Hilson, Esq.*
*Donahue, Tucker & Ciandella, PLLC*
*Attorney for the Defendant*

## MEMORANDUM OPINION

### I.  INTRODUCTION

Specialized Loan Servicing, LLC ("SLS") filed a complaint asking the Court for equitable relief to establish the priority of its mortgage over an earlier recorded judgment lien on the same real property, based on the doctrines of equitable subrogation and equitable reinstatement. The Town of Bartlett, New Hampshire (the "Town"), which holds the judgement lien, asserts that SLS

1

is not entitled to the relief requested because of SLS's own culpable negligence, and because the equities weigh in favor of the Town.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.    LEGAL STANDARD

The matter is before the Court on cross-motions for summary judgment.[1]  Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, a summary judgment motion should be granted only when the materials in the record show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.[2]  "Genuine," in the context of Rule 56(c), "means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." Rodriquez-Pinto v. Tirado-Delgado, 982 F.2d 34, 38 (1st Cir. 1993) (quoting United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992)). "Material," in the context of Rule 56(c), means that the fact has "the potential to affect the outcome of the suit under applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).  Courts faced with a motion for summary judgment

---

[1] The parties filed their Stipulated Facts for Summary Judgment (the "Joint Facts") on September 30, 2019 (Doc. No. 40).  They subsequently filed their own separate Statements of Material Facts in support of their summary judgment motions.  The Town's was filed on October 1, 2019 (Doc. No. 43); SLS's was filed on October 30, 2019 (Doc. No. 49).

[2] Rule 56 was slightly amended in 2010; however, the standard has not changed. Barton v. Clancy, 632 F.3d 9, 16 n.5 (1st Cir. 2011) (citing the advisory committee notes which state that "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word— genuine 'issue' becomes genuine 'dispute.'"); See also Newell Rubbermaid, Inc. v. Raymond Corp., 676 F.3d 521, 533 (6th Cir. 2012) ("The commentary to Rule 56 cautions that the 2010 amendments were not intended to effect a substantive change in the summary judgment standard.").  Accordingly, case law construing the prior version of Rule 56 is still applicable.

should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodriquez, 23 F.3d 576, 581 (1st Cir. 1994).

When evaluating cross-motions for summary judgment:

> [the] court must evaluate each motion independently, drawing all inferences against each movant in turn. AJC Int'l, Inc. v. Triple–S Propiedad, 790 F.3d 1, 3 (1st Cir. 2015). "Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir. 2010) (citing Adria Int'l Group, Inc. v. Ferré Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001)) (internal quotation marks omitted). Although each motion for summary judgment must be decided on its own merits, each motion need not be considered in a vacuum. Wells Real Estate, 615 F.3d at 51 (quoting P.R. American Ins. Co. v. Rivera–Vázquez, 603 F.3d 125, 133 (1st Cir. 2010)) (internal quotation marks omitted). "Where, as here, cross-motions for summary judgment are filed simultaneously, or nearly so, the district court ordinarily should consider the two motions at the same time, applying the same standards to each motion." Wells Real Estate, 615 F.3d at 51 (quoting P.R. American Ins., 603 F.3d at 133) (internal quotation marks omitted).

Laboy-Salicrup v. Puerto Rico Electric Power Authority, 244 F.Supp. 3d 266, 270 (D. P.R. 2017).

### III. FACTS

Edward Furlong (the "Debtor") owned real estate located at 1467 Route 302, Bartlett, New Hampshire (the "Property"). On April 28, 2006, the Debtor granted a mortgage on the Property in the amount of $220,000 to Mortgage Electronic Registration Systems ("MERS") as nominee for Countrywide Home Loans, Inc. (the "Original Mortgage").[3] In late 2013, the Debtor applied

---

[3] Joint Facts No. 1. Exhibit A (Mortgage dated 04/28/2006 at Carroll County Registry of Deeds Book 2525, Page 453).

to refinance the Original Mortgage.[4]  On October 29, 2013, at the beginning of the refinancing process, the settlement agent for the refinancing obtained a title report that stated there were no "Judgment/Liens" on the Property.[5]  Although this was true as of the date of the title search, it would not be true for long.

Well before the Debtor began the refinancing process, the Debtor and the Town had been involved in protracted litigation in state court over the Debtor's alleged zoning violation.  As part of the ongoing litigation, on December 19, 2012, the Carroll County Superior Court (the "State Court") granted the Town's Requests for Findings of Fact and Rulings of Law, resulting in the Debtor being ordered to pay the Town statutory fines totaling $344,025, with all but $10,000 suspended (the "2012 Order").[6]  In June 2013, the Town sought an attachment and a judgment lien to secure the 2012 Order by filing a Petition to Attach in the State Court.[7]  On November 15, 2013, the State Court entered an Order granting the Petition to Attach.[8]  The Order granting the Petition to Attach was recorded at the Carroll County Registry of Deeds on December 11, 2013[9]—six weeks after the date of the October 29, 2013 title report.

All the while, the Debtor continued with the refinancing process, in which he made several misrepresentations.  His loan application, which he signed on the same day as the closing, included a denial of any outstanding judgments or pending lawsuits.[10]  His "Owners/Seller [sic]

---

[4] Joint Facts No. 6.  The exact date the Debtor began the refinance process is unclear.  The loan application is dated January 3, 2014, the same date as the closing on the refinanced loan. The application shows Nationstar Mortgage LLC ("Nationstar") as the "loan originating company."  Exhibit O (Uniform Residential Loan Application).
[5] Joint Facts No. 8.
[6] Joint Facts No. 3.  Exhibit B (Order granting Town of Bartlett's Requests for Findings of Fact and Rulings of Law).
[7] Joint Facts No. 4.
[8] Joint Facts No. 12.
[9] Joint Facts No. 13.  Exhibit I (Writ of Attachment and Trustee Process at Carroll County Registry of Deeds Book 3121, Page 463).
[10] Joint Facts No. 22.

Affidavit," also signed at the closing, reiterated the same information.[11]  In addition, his loan application failed to list any debt (secured or unsecured) owed to the Town.[12]  Prior to the date of the Debtor's loan application, Nationstar ordered and obtained the Debtor's credit report on November 11, 2013, which, in contrast to the loan application, stated that there was a "serious delinquency, and derogatory public record or collection filed," and that the "time since delinquency is too recent or unknown."[13]

Nationstar's title work apparently did disclose a second mortgage on the Property held by MERS as nominee for Countrywide Bank.  On November 18, 2013, immediately prior to the closing on the mortgage refinance, MERS signed a subordination agreement in favor of Nationstar relating to that mortgage (the "Subordination Agreement").[14]  There is no evidence in the record that the Town was requested to sign a subordination agreement in connection with the refinancing.

On January 3, 2014, the Debtor signed a thirty-year note in the amount of $201,200, secured by a mortgage on the Property in favor of MERS as nominee for Nationstar (the "Refinanced Mortgage").[15]  On January 8, 2014, proceeds from the Refinanced Mortgage paid off the Original Mortgage.[16]  On January 16, 2014, the Refinanced Mortgage, as well as the Subordination Agreement for the BOA mortgage, were recorded at the Registry of Deeds.[17]  On

---

[11] Joint Facts No. 21.
[12] Joint Facts No. 23.
[13] Joint Facts No. 10 and 11.  Exhibit G (Credco Instant Merge Credit Report).
[14] Joint Facts No. 30.  Exhibit X (Subordination Agreement at Carroll County Registry of Deeds Book 3126 Page 752).  The second mortgage was subsequently assigned to Bank of America, N.A. and is referred to in the Joint Facts as the "BOA Mortgage."  Joint Facts No. 24.
[15] Joint Facts No. 26.  Exhibit S (Mortgage dated 01/03/2014 at Carroll County Registry of Deeds Book 3126 Page 736).
[16] Joint Facts No. 29.
[17] Joint Facts No. 26 and 30.

February 4, 2014, a release of the Original Mortgage was recorded.[18]  At this point, as a result of the documents recorded at the registry in connection with the refinancing, the Town's attachment lien was senior in priority to the Refinanced Mortgage.[19]

Litigation continued between the Debtor and the Town.  On May 26, 2016, the Town recorded an Execution of Judgment for all amounts due under the 2012 Order.[20]  At about this time, the Town realized the Original Mortgage had been discharged, and believed that the Refinanced Mortgage was in a subordinate or junior position to the Town's lien.[21]  Relying on the record lien priority information at the Carroll County Registry of Deeds, the Town scheduled a sheriff's sale of the Property.[22]  The Debtor filed a chapter 7 bankruptcy petition on August 12, 2016, which stopped the scheduled sale.  Counsel for Nationstar did not file an appearance in the bankruptcy case until March 9, 2017.[23]

In January, 2018, nearly two years into the bankruptcy case, and at least in part relying on the lien priorities on record,[24] the chapter 7 trustee entered into a Stipulation and Settlement Agreement (the "Stipulation") with the Town and the Bartlett Village Water Precinct.  The

---

[18] Joint Facts No. 31.  Exhibit Y (Release of Mortgage at Carroll County Registry of Deeds Book 3128, Page 931).
[19] The Subordination Agreement only referred to Nationstar, and made no reference to the Town,  So as a matter of record, the BOA Mortgage remained senior to the Town's later recorded attachment lien, even though it was now—as between Countrywide and Nationstar—contractually subordinated to the Refinanced Mortgage.  The parties do not argue otherwise.
[20] Joint Facts No. 33.  Exhibit Z (Writ of Execution).  The Execution of Judgment states the amount due including the Judgment for $344,025, attorney's fees of $17,214, costs of $638.45 and interest of $34,923.97 for a total of $396,801.42.
[21] Town Statement of Material Facts No. 29.  This fact is disputed by SLS.  SLS contends that the Town should have realized the Refinanced Mortgage "was intended to be in a first position priority position."  SLS Statement of Material Facts No. 29-30.  For reasons discussed later in this opinion, the Court finds what the Town arguably should have known is not relevant.
[22] Town Statement of Material Facts No. 34.  This fact is undisputed by SLS.
[23] In re Edward Charles Furlong, III, BK No. 16-11149-BAH, Notice of Appearance (Doc. No. 50). On November 22, 2016, MERS, as nominee for Nationstar Mortgage, LLC, had assigned the subject mortgage to Nationstar Mortgage, LLC.  Joint Facts No. 36.  Exhibit AA (Corporate Assignment of Mortgage at Carroll County Registry of Deeds, Book 3297, Page 217).
[24] Town Statement of Material Facts No. 43-45.  Exhibit C (Affidavit of Gene Chandler), Exhibit F (Affidavit of Michael Askenaizer).  This fact is disputed by SLS.  See discussion *infra*.

Stipulation contemplated the sale of all the Debtor's real estate (including the Property), and the distribution of proceeds from the sale. The Stipulation settled all past, pending and future disputes between the Debtor and the Town, in exchange for the Town's agreement to "carve out" for the bankruptcy estate a portion of the sale proceeds to which the Town would otherwise be entitled from the sale of the Debtor's real estate. The chapter 7 trustee filed a motion to approve the Stipulation (the "Motion to Approve") which was noticed to all parties and set for hearing.[25] On February 7, after a duly noticed hearing,[26] the Court granted the Motion to Approve.[27] Nationstar neither objected to the Motion to Approve, nor appeared at the hearing.[28]

On March 15, 2018, SLS filed an appearance in the bankruptcy case. Shortly after filing an appearance, SLS filed a motion for relief from the automatic stay. On June 27, 2018, the Court denied the motion. Five months later, on November 29, 2018, SLS commenced this adversary proceeding.

IV.  DISCUSSION

New Hampshire is a "race-notice" jurisdiction. In a race-notice jurisdiction, a "purchaser or creditor has the senior claim if he or she records without notice of a prior unrecorded interest." Amoskeag Bank.v Chagnon, 133 N.H. 11, 14, 572 A.2d 1153, 1155 (1990); N.H. Rev. Stat. Ann. 477:3-a. In general, notice may be actual, constructive or inquiry. Bilden Properties, LLC v.

---

[25] In re Edward Charles Furlong, III, Bk No. 16-11149-BAH, Motion to Approve Stipulation and Settlement Agreement (Doc. No. 70).
[26] The Certificate of Service accompanying the Motion to Approve reflects that it was served upon Nationstar at its mailing address on the list of creditors in the chapter 7 case. The filing receipt in the Court's CM/ECF system indicates that it was also served on Nationstar's counsel of record in the chapter 7 case.
[27] In re Edward Charles Furlong, III, Bk No. 16-11149-BAH, Order Granting Motion (Doc. No. 72).
[28] On February 6, 2018 (the day before the hearing), Nationstar assigned the Refinanced Mortgage to SLS. Joint Facts No. 45. Exhibit CC (Assignment of Mortgage/Deed of Trust at Carroll County Registry of Deeds Book 3374 Page 72). Neither of the parties raise any issue as to the adequacy of Nationstar's notice of the Motion to Approve, the timing of the assignment from Nationstar to SLS, or the fact that SLS took the assignment subject to any issues of record.

Birin, 165 N.H. 253, 258, 75 A.3d 1143, 1147 (2013).  If a document is properly recorded at the registry of deeds, creditors and purchasers are deemed to have constructive notice of the prior lien, regardless of whether the purchaser or creditor performs a title search.  Amoskeag Bank v. Chagnon, 133 N.H. at 14, 572. A.2d at 1155.  In addition, if a creditor or purchaser has knowledge of a prior claim, they are deemed to have actual notice of a prior interest and may be considered a junior interest, even if the prior claim was not recorded.  Id.  However, even though both purchasers and creditors are treated the same regarding actual and constructive notice, they are treated differently regarding inquiry notice.

A party is on inquiry notice upon receipt of enough information pertinent to the title that would cause a reasonably prudent person to make an inquiry into the state of the title.  C.F. Invs. v. Option One Mortgage Corp., 163 N.H. 313, 316, 42 A.3d 847, 849 (2012).  "If a party is obligated to investigate, then the party is chargeable with actual notice of what the investigation will show."  Amoskeag Bank v. Chagnon, 133 N.H. at 14, 572 A.2d. at 1155.  The Amoskeag case addressed whether a creditor or purchaser was on inquiry notice and had an obligation to investigate further upon discovery of a defectively recorded mortgage.  The Court held that although an improperly recorded interest may be enough to put a good faith purchaser on notice of a prior claim, it is not enough to put an attaching lien creditor on notice of that same claim.  "[A]n attaching creditor can have actual notice of a prior interest only if he or she discovers a *properly recorded* interest during a title search or independently learns of the existence of the interest"  Id. (emphasis in original).  *See also* Cornell v. The Bank of New York Mellon Trust Company, N.A. (In re Pellerin), 529 B.R. 801 (Bankr. D.N.H. 2015) (a mortgage with a defective acknowledgment is not a properly recorded mortgage and does not provide constructive notice of the claim to lien creditors).

In this case, at the time of the bankruptcy filing, the registry of deeds indicated the Town's lien was prior in time—and therefore superior—to the Refinanced Mortgage. SLS urges the Court, as a court of equity, to apply the doctrine of equitable subrogation to reorder the priority of the recorded liens to prevent what SLS argues would be an unjust windfall for the Town.[29]

SLS's request is not without precedent. New Hampshire courts have applied the doctrine of equitable subrogation to reorder the priority of liens and attachments when the following conditions are met: (1) the subrogee did not act as a volunteer; (2) the subrogee paid a debt upon which it was not primarily liable; (3) the subrogee paid the entire debt; and (4) the subrogation does not work any injustice to the rights of others. Chase v Ameriquest Mortg. Co., 155 N.H. 19, 921 A.2d 369 (2007). In this case, the first three elements are not in dispute. However, the parties disagree regarding the fourth element: whether the application of the doctrine works any injustice to the parties.

Both SLS and the Town agree that the Town knew that its lien was junior in priority to the Original Mortgage when the 2012 Order was recorded. The parties also agree that the Town did not discover the change in its priority in the registry record until several years later. The parties focus their arguments on (a) the significance of SLS failure to discover and address the Town's lien when the Property was refinanced; and (b) the significance and reasonableness of the

---

[29] Although the parties made it clear—during the pretrial hearings leading up to the filing of their summary judgment motions, in their motions, and in their memoranda—that they intended the motions to fully resolve the complaint, the parties focused their arguments virtually exclusively on the doctrine of equitable subrogation (Count I of SLS's complaint), and not the doctrine of equitable reinstatement or reassignment, which for convenience the Court refers to as equitable reinstatement (Count II). The third and final count simply requested a declaratory judgment in favor of SLS based on the first two counts. As will be discussed below, the parties' failure to specifically argue the doctrine of equitable reinstatement does not convert their motions to motions for partial summary judgment, and the Court is nonetheless able to grant complete relief thereunder.

Town's reliance upon the discovery of its superior lien position over the Refinanced Mortgage when developing its litigation and enforcement strategies to collect its judgment.

To begin, the parties spend a fair amount of energy either highlighting or excusing SLS's apparent failure to discover or address the Town's lien during the refinancing process. In support of its position, SLS recites several misrepresentations by the Debtor in the loan application regarding pending litigation and liens on the Property, including denial of any pending state court judgment or decree; denial of any outstanding judgments or participation in pending lawsuits, and failure to list his debt obligation to the Town. On the other hand, the Debtor's credit report obtained by the closing agent indicated "serious delinquency and derogatory public record or collection filed" and "time since delinquency is too recent or unknown."

The Town argues that Nationstar was outright negligent in failing to discover the Town's attachment lien. The Town asserts that if, prior to closing, there had been an update of the title report or follow up on the conflicting information regarding liens and lawsuits received from other sources, the Debtor's misrepresentations would have been revealed. In the end, even if the failure to discover the Town's lien was a result of negligence, New Hampshire case law is clear that negligence is not a bar to applying the equitable subrogation doctrine. Fifield v. Mayer, 79 N.H. 82, 104 A. 887 (1918) (surety's negligence did not preclude application of equitable subrogation doctrine to place refinanced mortgage in priority position over previously recorded mechanic's lien).

Undeterred, the Town next attempts to make a distinction between ordinary negligence and what it describes as "culpable" negligence, which is characterized by a "want of watchfulness and diligence, the unreasonable inattention and inactivity of creditors who slumber on their

10

rights." Coffey v. Bresnahan, 127 N.H. 687, 693, 506 A.2d. 310, 314 (1986). The Town argues that the existence of "culpable" negligence should preclude the application of the doctrine here. While the Court acknowledges the apparent unfairness in essentially excusing a party's negligence in the course of granting it equitable relief, it nonetheless need not accept the Town's invitation to create an exception to the equitable subrogation doctrine for "culpable negligence," an exception which does not appear to be supported by the existing New Hampshire case law. Instead, the Court focuses on the equities of the case.

Under applicable New Hampshire law, equitable subrogation (or alternatively, equitable reinstatement) is only appropriate if it does not work an injustice to the rights of others. The Court will apply equitable principles when "the acts of the parties are not legally effective to accomplish the result which they intended . . . to correct the mistake and produce the intended result *when the rights of third parties will not be affected thereby*." Caron v. Manchester Fed. Savg. & Loan Ass'n, 90 N.H. 560, 564, 10 A. 668, 671 (1940) (emphasis provided). The availability of equitable relief "must be decided in each case in accordance with the established facts [of the case]." Id. Consideration of the effect of the requested relief on the rights of third parties is a central element of an equitable claim. Chase v Ameriquest Mortg. Co., 155 N.H. 19, 921 A.2d 369 (2007).

In this case, the summary judgment record sufficiently shows that the Town—initially on its own, and later with the chapter 7 trustee—made strategic and tactical litigation decisions in reliance on the registry record. It is undeniable that the Town and the chapter 7 trustee invested time and energy resolving their disputes based on an understanding of the lien priorities reflected at the registry. Even before this chapter 7 case began, the Town commenced a sheriff's sale to collect on its lien, which would have made little or no sense if the Town believed its lien was

subordinate to the Refinanced Mortgage. During the case, the Town and the chapter 7 trustee negotiated a Stipulation based on their mutual understanding of the Town's record lien priority, in which the Town ceded to the Trustee a portion of the sale proceeds it would otherwise be entitled to based its record lien priority. SLS did not interpose an objection to approval of the Stipulation.

SLS argues that the Town knew or should have suspected an error in the registry priorities, based on available and properly recorded information in 2015 and 2016, the time period in which the Town began its lien enforcement actions. It cites the properly recorded Subordination Agreement relating to the BOA Mortgage, and argues that the Town should have noticed that SLS's predecessor (or someone) was making payments of real estate taxes and insurance on the Property.[30] But regardless, as discussed earlier in this opinion, under New Hampshire law, an attaching lien creditor is only charged with actual and constructive knowledge of properly recorded liens. In general, unlike a bona fide purchaser, an attaching lien creditor is not on inquiry notice for an unrecorded or improperly recorded claim. An attaching lien creditor may rely on the registry record. Amoskeag Bank v. Chagnon, 133 N.H. at 15, 572 A.2d at 1155. In like manner, the Court will not impose a duty of inquiry upon the Town in its role as an attaching

---

[30] SLS also points to the language in the Stipulation concerning the existence of other liens on the Property as evidence of Town's knowledge of SLS's hoped-for priority position. True, the Stipulation provides that proceeds from the sale of the Debtor's property would, after payment of closing costs, be paid "to any interest in the specific property being sold that is superior to the Town's judicial liens thereon, under state law… including but not limited to with respect to the [Property], any and all liens determined to be superior to the Town's judgment lien thereon." Stipulation ¶4. However, in the Court's view, there is no construction of that provision of the Stipulation that would permit including the lien held by SLS as a "senior lien." While the Stipulation also provides that the "parties agree that the Town enjoys a first-position lien on the [Property], following any outstanding taxes"—a statement that ignores what appears to be the undisputed priority of the BOA Mortgage over the Town's lien—the Stipulation is otherwise faithful to the registry record, and nowhere recognizes the SLS's lien as senior to the Town's. Stipulation ¶¶ 3 and 5. The Court finds that the Stipulation's reference to "senior liens" is plausible only when construed with respect to the BOA Mortgage and real estate tax liens, but implausible if (as SLS urges) it also includes the Refinanced Mortgage particularly in light of the value of the Property and the outstanding balances of the mortgages. The Court further finds that the reference to "senior liens" does not create a genuine dispute as to whether SLS's lien is included in that term.

12

lien creditor, in the context of equitable subrogation, when one is not otherwise imposed by law.[31]

The Court further finds SLS's failure to act upon notice of the Town's prior claims of priority greatly weakens the strength of its current plea for equitable relief.  As stated by the New Hampshire Supreme Court, it is the Court's duty to "guard the integrity and reliability of our recording system, viewing claims to circumvent the established order of priority, through resort to equity, with trepidation."  Hilco Inc. v Lenentine, 142 N.H. 265, 267, 698 A.2d 1254, 1256; Amoskeag v. Chagnon, 133 N.H. at 14, 572 A.2d at 1155 ("The [recording] statutes serve to protect both those who already have interests in land and those who would like to acquire such interests").  The grant of equitable relief is within the sound discretion of the trial court and may only be awarded, "not in opposition to, but in accordance with established principles of law." Hanslin v. Keith, 120 N.H. 361, 364, 415 A.2d 329, 331 (1980).

Although New Hampshire case law is replete with examples of circumstances where the court applied equitable principles to reorder the record priority of liens, on grounds that include excusable ignorance, deceit and the original intention or expectations of the parties involved, the New Hampshire Supreme Court has repeatedly stated the party seeking equitable relief must also demonstrate the remedy sought is not unjust to third parties.  See International Trust Co. v. Davis & Farnum Mfg. Co., 70 N.H. 118, 119, 46 A. 1054, 1055  (doctrine applied to restore refinanced mortgage to original first position, stating that attaching creditors "cannot complain because the transaction is given the effect intended by the parties thereto," but noting that the attaching

---

[31] The Court specifically distinguishes its analysis from situations involving a bona fide purchaser for value. Compare Bilden Properties, LLC v. Birin, 165 N.H. 253, 78 A.3d 1143 (a bona fide purchaser for value is on inquiry notice of incorrectly recorded mortgage lien based on information in chain of title that would raise a reasonably inquiry, as a matter of law).

creditors "have not done or omitted to do any act relying upon the recorded discharge" (internal citation omitted)); Fifield v. Mayer, 79 N.H. at 87, 104 A. at 889 (negligence does not bar equitable subordination "unless its enforcement would be prejudicial to others who are not at fault") (citation omitted).  Equitable subrogation or equitable reinstatement are only appropriate if they do not work an injustice to the rights of others.  The element of prejudice—or the absence of prejudice—is central to both doctrines.

In this case, the Town, an attaching lien creditor, took actions based on the registry record that are incongruous with SLS's claim for equitable subrogation and equitable reinstatement.  Although the mere passage of time is not preclusive to the requested relief, it weakens the equities of the plaintiff's case if, during that time, third parties have made decisions and taken actions based on the registry record.  The Court finds, under the facts of this case, because the Town acted in reliance on the registry record, equitable subrogation or equitable reinstatement would each work an injustice to the rights of the Town, as well as the chapter 7 trustee, thus precluding the equitable relief which SLS seeks.

### V.    CONCLUSION

For the foregoing reasons, the Court grants the Town's motion for summary judgment, and denies SLS's motion for summary judgment.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with this opinion.

ENTERED in Concord, New Hampshire.

Date: September 30, 2020

/s/ Bruce A. Harwood

Bruce A. Harwood
Chief Bankruptcy Judge